Brinkerhoee, C. J.
The question is, whether the state of facts set forth in the petition constitutes a cause of action. The question is one of some difficulty; and the facts, as alleged, make a case which strongly inclines the mind to sustain the action, if that can be done without so far trenching upon established rules of law as to amount to judicial legislation. We have, therefore, held the case for some time under advisement, and have bestowed upon it the best consideration of which we are capable, but have been compelled to the unanimous conclusion that the court below was right; that, upon the facts alleged, no action can be sustained.
Lord Campbell, in Gerhard v. Bates, 20 E. L. & E. 136, lays down the rale thus: “If A fraudulently makes a representation which is false, and which he knew to be false, to B, meaning that B shall act upon it, and B, believing it to be true, does act upon it, and thereby suffers a damage, B may maintain an action on the case for deceit.” We have been able to find no case which transcends the limits thus defined—no case which purports to hold, or is decided on the principle, that if A makes a false and fraudulent representation to B, meaning that C, and C alone, shall act upon it, and B thereupon assumes to act upon it, and suffers damage, B can maintain an action against A for the deceit. And as transactions of the kind last supposed must be of frequent occurrence *in *64 every commercial country, the fact that no such case can be found,, is strong evidence that such a doctrine is unknown to the law-And the case last above supposed, is, really, the case before us-The representations complained of were not made to the plaintiff, meaning that the plaintiff should act upon them in any manner or matter affecting his own interests, but were made to the plaintiff, acting as the avowed agent of his brother, simply in a representative-capacity, meaning that the brother should act upon them; and the fact that the brother was meant to act upon them, through the-plaintiff, as his agent, can not, it seems to us, alter the case in any legal aspect.
The cases which seem most nearly to approach a doctrine which it would be necessary to hold in order to sustain this action, are-Thomas v. Winchester, 2 Selden, 397; Langridge v. Levy, 2 M. & W. 518; and same case on error, 4 M. & W. 336.
In the former case it was held, that “ a dealer in drugs and medicines, who carelessly labels a deadly poison as a harmless medicine,, and sends it, so labeled, into market, is liable to all persons, who,, without fault on their part, are injured by using it as such medicine in consequence of the false label,” and this, “ though the poisonous drug with such label may have passed through many intermediate sales before it reaches the hands of the person injured.” In that case, the article sold purported to be a medicine, was intended for retail in minute quantities, and to be administered in doses to a great number of persons. And the court regarded the accompanying label as a continuous representation to, and intended to be acted on by, whomsoever it might concern ; that the article was what its-label purported. In these particulars, and others, the case differs-from that before us, and falls short of being conclusive of it, if the case be accepted as authority. It is worthy of remark, however, that .Gardiner, J., in his concurring opinion, places his concurrence-solely on the ground that the sale of the poison, without a label indicating that it was a poison, was declared a misdemeanor by a statute of New York.
In the latter case, Langridge v. Levy, the plaintiff’s father *bought'of the defendant, avowedly for the use of himself and his sons, a gun, which the defendant falsely and fraudulently warranted to be of the make of one N. and to be a good, safe, and secure gun; whereas the gun was not made by N., but by an inferior-maker, and was unsafe, ill-manufactured, dangerous, and unsound *65 of all -which the defendant, at the time of the. warranty, had notice;: and the plaintiff knowing and confiding in the warranty, used the-gun, which but for the warranty he would not have done; and the' gun, being in the hands of the plaintiff, by reason and wholly in consequence of the unsoundness, etc., burst and injured the plaintiff, etc.
The action in the court of exchequer was held to be maintainable, and the judgment was afterward affirmed in error. Parke, B., in delivering the opinion of the court, indicates so clearly the distinctions between that case and the one now before us, that I quote him at some length. He says : “ It is clear that this action can not be supported upon the warranty as a contract, for there is no privity in that respect between the plaintiff and the defendant. The-father was the contracting party with-the defendant, and can alone sue upon that contract for the breach of it. The question, then, is whether enough is stated on this record to entitle the plaintiff to sue, though not on the contract; and we are of opinion that there is, and that the present action may be supported. We are not prepared to rest the case upon one of the grounds on which the learned counsel for the plaintiff sought to support his right of action, namely, that wherever a duty is imposed on a person by contract or otherwise, and that duty is violated, any one who is injured by the violation of it may have a remedy against the wrong-doer. We' think this action may be supported without laying down a principle which would lead to that indefinite extent of liability, so strongly put.in the course of the argument on the part of the defendant;, and we should pause before we made a precedent, by our decision, which would be an authority for an action against the vendors, even of such instruments and articles as are dangerous in themselves, at the suit of any person whomsoever into whose hands they might happen to pass, and who should be injured thereby. We do< not feel it necessary to go to that length, and our ^judgment proceeds upon another ground. If the instrument in question, which is not of itself dangerous, but which requires an act to be done—that is, to be loaded—in order to make it so, had been simply delivered by the defendant, without any contract or representation on his part, to the plaintiff, no action would have been maintainable for any subsequent damage which the plaintiff might have sustained by the use of it. But if it had been delivered by the defendant to the plaintiff, for the purpose of .being so used byt *66 .him, with an accompanying representation to him that he might safely so use it, and that representation had been false to the defendant's knowledge, and the plaintiff had acted upon the faith of its being true, and had received damage thereby, then there is no •question but that an action would have lain, upon the principle of .a numerous class of cases, of which the leading one is that of Pasley v. Freeman, 3 Term, 51; which principle is, that a mere naked falsehood is not enough to give a right of action; but if it be a ■•falsehood told with an intention that it should be acted upon by ■the party injured, and that act must produce damage to him; if, ■'instead of being delivered to the plaintiff immediately, the instrument had been placed in the hands of a third person, for the purpose of being delivered to, and then used by, the plaintiff, the like false representation being knowingly made to the intermediate ■person to be communicated to the plaintiff, and the plaintiff had i-acted upon it, there can be no doubt but that the principle would -equally apply, and the plaintiff would have had his remedy for the • deceit; nor could it make any difference that the third person also ■was intended by the defendant to be deceived; nor does there seem to be any substantial distinction if the instrument be delivered, in ■order to be so used by the plaintiff, though it does not appear that the defendant intended the false representation itself to be communicated to him. There is a false representation made by the •defendant, with a view that the plaintiff should use the instrument in -.a dangerous way, and, unless the representation had been made, the dangerous act would never have been done. If this view of the law be correct, there is no doubt but that the facts, which upon this record must be taken to have been found by the jury, bring this case within the ^principle of those referred to. The defendant has knowingly sold the gun to the father, for the purpose .-of being used by the plaintiff, by loading and discharging it, and has knowingly made a false warranty that it might be safely done, in •order to effect the sale; and the'plaintiff, on the faith of that warranty, and believing it to be true (for that is the meaning of the •term confiding), used the gun, and thereby sustained the damage which is the subject of this complaint. The warranty between these parties has not the effect of a contract. It is no more than a -.representation; but it is no less. The delivery of the gun to the father is not, indeed, averred; but it is stated that, by the act of •-the defendant, the property was transferred to the father, in order *67 that the son might use it; and we must intend that the plaintiff took the gun with the father’s consent, either from his possession ■or the defendant’s; for we are to presume that the plaintiff acted lawfully, and was not a trespasser, unless the contrary appear.
“ We therefore, think, that as there is fraud and damage, the result ■of that fraud, not from an act remote and consequential, but one contemplated by the defendant at the time as one of its results, the party guilty of the fraud is responsible to the party injured. We do not. decide whether this action would have been maintainable if the plaintiff had not known of and acted upon the false representation; nor whether the defendant would have been responsible to a person not within the defendant’s contemplation at the time of the sale, to whom the gun might have been sold or handed over. We decide that he is responsible in this case for the consequences of this fraud while the instrument was in the possession of a person to whom his representation was either directly or indirectly communicated, and for whose use he knew it was purchased.”
It will be seen that, in order to render the case before us analogous to that of Langridge v. Levy, it would have been necessary for the plaintiff at least to have alleged that the diseased sheep were purchased for the avowed purpose of turning them in . with other sheep •of his own; but it does not even appear that, at that time, he had any •sheep of his own, or that he expected to have any. And in the subsequent case of Winterbottom v. Wright, 10 M. & W. 107, Lord Abinger *declares that the case of Langridge v. Levy has been much misapprehended, and that the principle of that case ought not to be extended.
The influences of human conduct, good or bad, are far-reaching, .and are often seen and felt in consequences exceedingly remote, but uncertain and complicated. It is simply impossible that municipal law should take cognizance of all these consequences. From necessity, a large share of them must be left to the jurisdiction of public opinion, individual conscience, and, finally, to the retributions of another world. There must, somewhere, be fixed a limit between the near and remote, direct and indirect consequences, beyond which the law will not take cognizance of them. And in this ease we are satisfied that one of the prescribed limits is this—that the false and fraudulent representations must have been intended to be be acted on, in a manner affecting himself, by the party who seeks *68 redress for consequential injuries. If this limit is to be extended, it must be the work of the legislature.
We have considered this case solely upon principles of the common-law; for, under the ruling of this court, in Yining v. Bricker, 14 Ohio St. 331, the act of February 19, 1837, “to prevent the spread of disease among sheep,” leaves the civil rights and remedies of parties sustaining damage by reason of the sale of diseased sheep,, unchanged.

Judgment affirmed.

Scott, Day, White, and Welch ¿TJ., concurred.